**SUNG LIANG TAN, Petitioner,**

v.

**Alberto GONZALES, Attorney General of the United States, Respondent.**

**No. 06–0007–ag.**

United States Court of Appeals, Second Circuit.

Nov. 28, 2006.

Jeffrey C. Bloom, Jeffrey C. Bloom, P.C., Flushing, NY, for Petitioner.

Julie C. Dudley, Assistant United States Attorney (John L. Brownlee, United States, Attorney for the Western District of Virginia, on the brief), Roanoke, VA, for Respondent.

PRESENT: Hon. JOSEPH M. McLAUGHLIN, Hon. PETER W. HALL, Circuit Judges, and Hon. JOHN GLEESON, District Judge.*

## SUMMARY ORDER

Sun Liang Tan petitions for review of those portions of the BIA's December 5, 2005 decision in which the BIA affirmed Immigration Judge ("IJ") Jeffrey S. Chase's order denying Tan's applications

---

* The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

for withholding of removal and relief under the Convention Against Torture ("CAT"), and ordering him removed. *In re Sun Liang Tan,* No. A96 426 050 (B.I.A. Dec. 5, 2005), *aff'g* No. A96 426 050 (Immig. Ct. N.Y. City Apr. 16, 2004). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When the BIA adopts the decision of the IJ and supplements the IJ's decision, this Court reviews the decision of the IJ as supplemented by the BIA. *See Yu Yin Yang v. Gonzales,* 431 F.3d 84, 85 (2d Cir.2005); *Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005). The IJ's findings of fact are reviewed for substantial evidence, *Joaquin–Porras v. Gonzales,* 435 F.3d 172, 181 (2d Cir.2006), and we will reverse "only if no reasonable fact-finder could have failed to find petitioner eligible for relief." *Kyaw Zwar Tun v. INS,* 445 F.3d 554, 562 (2d Cir.2006) (internal quotation marks omitted). We review de novo "[q]uestions of law regarding what evidence will suffice to carry any asylum applicant's burden of proof...." *Chen,* 417 F.3d at 271.

■ Tan claimed that he suffered persecution in Indonesia because he is ethnic Chinese and Catholic and is entitled, therefore, to a presumption of a well-founded fear of future persecution and withholding of removal. He based this claim on an incident in 1994 when a group of unknown individuals shouted "hey Chinese, you have to go home to your country," and attacked Tan and his cousin, causing the cousin's death and Tan to spend a day in the hospital. The IJ found the attack did not rise to the level of persecution because it was a single random act of violence, and Tan could not link the unknown attackers to either the government or a group the government is unable or unwilling to control. *See Pavlova v. INS,* 441 F.3d 82, 85 (2d Cir.2006) ("[P]ri-

vate acts may be persecution if the government has proved unwilling to control such actions." (internal quotation marks omitted)); *Lie v. Ashcroft,* 396 F.3d 530, 537 (3d Cir.2005) ("[A]s with any claim of persecution, violence or other harm perpetrated by civilians against the petitioner's group does not constitute persecution unless such acts are committed by the government or forces the government is either unable or unwilling to control." (internal quotation marks omitted)). The IJ's conclusion is further supported by both Tan's testimony that the Indonesian government investigated the attack, as well as the U.S. State Department country report noting that the Indonesian government is taking steps to prevent violence against the ethnic Chinese.

■ In addition to the 1994 attack, Tan claimed a well-founded fear of persecution based on other instances in Indonesia's history, such as the riots in 1998, where Chinese Christians were subjected to violence. The IJ concluded, however, that the evidence does not suggest a pattern or practice of treatment against the Chinese that rises to the level of persecution. That conclusion is substantially supported by the country report stating that anti-Chinese violence has been in decline since 1998 and that the Indonesian Government is taking steps to prevent such violence, as well as by Tan's own testimony that the ethnic Chinese not only hold a considerable amount of the wealth and own a majority of the businesses in Indonesia but are also allowed to worship freely and attend college. *See, e.g., Lie,* 396 F.3d at 537–38 (finding no pattern or practice of persecution against Chinese Christians in Indonesia, despite the violence of the 1998 riots, because: the Indonesian government specifically promotes religious and ethnic tolerance; violence against Chinese Christians sharply declined in 1999; and the

violence of the 1998 riots was wrought by civilians with no indication that it was instigated or condoned by the government). Because nothing in the record would compel a reasonable fact-finder to conclude otherwise, we find substantial evidence supports the IJ's determination that Tan failed to establish a well-founded fear of future persecution.

 Tan's claim for CAT relief is based on the same grounds as his claim for withholding of removal. Because the government's investigation of the death of Tan's cousin belies Tan's claim that the government would acquiesce in his torture, and nothing else in the record would compel us to conclude that Tan has been, or more likely than not will be, tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," we find the IJ's denial of CAT relief is supported by substantial evidence. *See Khouzam v. Ashcroft,* 361 F.3d 161, 168 (2d Cir.2004).

For the foregoing reasons, the petition for review is **DENIED**.